UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ANNIE OAKLEY ENTERPRISES INC, et al., <br><br> Plaintiffs, <br><br> v. <br><br> KINSALE INSURANCE COMPANY, <br><br> Defendant. | CASE NO. 1:21-CV-187-HAB |

**OPINION AND ORDER**

As Yogi Berra said, "it's like déjà-vu, all over again."[1] While this Yogi-ism was referencing a string of back-to-back home runs by sluggers Mickey Mantle and Roger Marris in 1961, this Court's reference to the phrase is not so thrilling. After granting in part and denying in part the parties' cross-motions for summary judgment (ECF No. 119), the Court directed the parties to engage in settlement discussions and, if no settlement was achieved, to refile their cross-motions for summary judgment as to the remaining issue in the case – whether the stipulated judgment in an underlying suit was enforceable against Defendant Kinsale Insurance Co. ("Kinsale") under Indiana law. None of that occurred. Instead, Kinsale filed its Motion for Reconsideration seeking a second bite at the apple apparently under the belief that, to quote Yogi again, "[i]t ain't over till it's over."[2] Because Kinsale had ample opportunity to brief and raise the

---

[1] There is some disagreement that Yogi Berra uttered these words. Berra told the Times language columnist William Safire in 1987 that he never said this, but later in life he was known to take credit for the quotation.

[2] This is presumed to be a shortening of the adage "The ball game isn't over until the last man is out." ON LANGUAGE - The New York Times, https://www.nytimes.com/1987/02/15/magazine/on-language.html. In July 1973, the Mets trailed the Chicago Cubs by 9 ½ games in the National League East. They rallied to clinch the division title and made it to the World Series.

issues it now complains about, and the Court finds no manifest error of law, the Motion for Reconsideration will be DENIED.

### A. Background

The Court presumes familiarity with the factual and procedural backgrounds outlined in this Court's Opinion and Order on the cross-motions for summary judgment. (ECF No. 119, at 2-8). Plaintiffs Annie Oakley Enterprises, Inc. ("Annie Oakley") and Renee Gabet ("Gabet") obtained a stipulated $1.3 million judgment ("Stipulated Judgment") against Rise N Shine Online LLC ("RSO") in a trademark infringement suit they filed in the United States District Court, Southern District of Indiana, Indianapolis Division. *See Annie Oakley Enter. Inc, et al. v. Rise N Shine Online, et al.,* 1:19-CV-1732 (S.D. Ind.) ("Underlying Suit"). Kinsale, RSO's insurer, declined coverage and a defense to RSO in that suit. After that case settled and the Stipulated Judgment entered,[3] Annie Oakley and Gabet brought suit in this Court seeking to enforce the judgment against Kinsale. They seek a declaratory judgment that Kinsale must indemnify RSO for the Stipulated Judgment. (Am. Compl., ECF No. 78). The case proceeded through several rounds of briefing on cross-motions for summary judgment, including one round of briefing sua sponte ordered by the Court. (ECF Nos. 93-98, 102-103, 104-107). The Court then ruled on those motions finding that Kinsale's insurance contract applied to the stipulated judgment and no exclusions foreclosed coverage. It left open whether the stipulated judgment was reasonable and obtained in good faith.

---

[3] The Settlement Agreement ("SA") that led to the Stipulated Judgment contains a choice of law provision (ECF No. 97, ¶13) that states that the SA shall be construed, interpreted, and governed by Indiana law. After the Stipulated Judgment was entered, Plaintiffs then separately agreed with RSO that they would not seek to collect the judgment from RSO but would instead pursue collection from Kinsale under the Policy. (Covenant Not To Execute, ECF No. 98) ("Covenant").

In examining the cross-motions for summary judgment, the Court noted that the parties presented three separate "buckets" of arguments: (1) insurance coverage related arguments; (2) arguments as to whether Kinsale must indemnify RSO and pay the judgment; and (3) a hodge podge of miscellaneous arguments, none of which were particularly compelling. When addressing the first bucket of arguments, the Court's first task was to resolve the state's law to be applied to these issues, either Florida or Indiana law. The Court applied Indiana law because, in part, Kinsale argued that there was no substantive difference between the laws of Indiana and Florida on the insurance contract questions. *See* ECF No. 95, at 2 ("In this case, there is no conflict on the threshold issue of coverage between Florida and Indiana. Both states decide the threshold duty to defend based on the plain language of the insurance policy that the insured purchased.") Because this Court sits in Indiana and Kinsale affirmatively represented that there was no conflict of law on the coverage issues, this Court determined Indiana law would be applied to the coverage issues in the case. (ECF No. 119, at 9-10). Next, the Court determined that under Indiana law, collateral estoppel prevented Kinsale from raising defenses now that it could have raised had it appeared and defended its insured in the Underlying Suit. (ECF No. 119, at 11-12). Thus, the Court's obligation was solely to determine whether the Judgment obtained in the Underlying Suit fell within the scope of the insuring agreement between RSO and Kinsale, subject to any applicable exclusions. On this point, the Court found that the Judgment fell within the scope of the insuring agreement and no exceptions applied. (ECF No. 119, at 13-23). Thus, the Court found that Kinsale had an obligation to indemnify RSO under the insurance contract.

But the Court went on to acknowledge the parties' position that indemnification coverage for a judgment and enforceability of one are two distinct animals. Indeed, since the obligation of Kinsale to indemnify RSO for the Judgment is subject to good faith and reasonableness

determinations, the Court then examined whether the Stipulated Judgment entered between Plaintiffs and RSO met those standards. On that point, the parties again engaged in a choice of law debate. Plaintiffs asserted that Indiana law applied to the enforceability of an Indiana judgment and Kinsale argued that Florida law applied. The Court looked to the parties' SA and the Covenant and determined that they both expressly include Indiana choice of law provision. The Court also determined that the Stipulated Judgment is a Judgment from an Indiana court entitled to review under Indiana law. Finally, the Court noted that "[a]bsent a cogent argument that Indiana law should not apply here, the Court will apply Indiana law to the enforceability of the [Stipulated] Judgment." (ECF No. 119, at 24). Following these rulings, the Court then determined that it was at a "distinct disadvantage to decide this issue based on the briefing and evidence submitted presently":

> Kinsale has briefed the issue entirely based on Florida law, which this Court has determined does not apply. Second, both parties' briefing focused on the wide range of issues raised in this litigation and the Court believes they have given short shrift to the evidentiary and legal basis that underlies both their arguments on this issue. Now that the Court has resolved the lion's share of the issues in the litigation, the Court believes that the parties and the Court would be best served to address this claim in isolation. Accordingly, the Court DENIES both parties' motions for summary judgment on Count VI of Kinsale's counterclaims, without prejudice to refiling.

(ECF No. 119, at 26). The parties were then encouraged to engage in settlement negotiations and given deadlines for filing renewed motions for summary judgment on the remaining issue in the case. Rather than proceed as ordered, Kinsale filed the present motion for reconsideration contending that the Court made manifest errors of law in its summary judgment rulings.

### B. Legal Standard

The court has inherent authority to reconsider interlocutory decisions at any time before final judgment. *Terry v. Spencer*, 888 F.3d 890, 893 (7th Cir. 2018). "Motions for reconsideration serve a limited function; to correct manifest errors of law or fact or to present newly discovered

4

evidence." *Eberhardt v. Walsh*, 122 F.4th 681, 688 (7th Cir. 2024). "Belated factual or legal attacks are viewed with great suspicion, and intentionally withholding essential facts for later use on reconsideration is flatly prohibited." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). "Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Id.* "Further, motions for reconsideration generally are not encouraged . . . because, in general, a district court's rulings are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Cima v. WellPoint Health Networks, Inc.*, 250 F.R.D. 374, 386 (S.D. Ill. 2008).

**C. Analysis**

No doubt, Kinsale is disappointed in this Court's summary judgment ruling. But it made the bed it is laying in. As emphasized in the Court's original ruling, Kinsale's actions or their inactions related to the Underlying Suit created the situation it faces now. That is how this Court viewed the case. And a motion for reconsideration is not properly grounded in a request for a district court to rethink a decision it has made, rightly or wrongly. Kinsale's motion seeks to relitigate issues that were previously presented to the Court and that the Court has considered. Still the Court will briefly address two issues raised in Kinsale's motion.[4]

Kinsale's motion asks the Court to rethink its application of Indiana law to the contract construction arguments and, in turn, its application of the law regarding collateral estoppel to prevent Kinsale from using extrinsic evidence related to the Underlying Suit to attack the

---

[4] The Court has no intention of rehashing all the various arguments made by Kinsale in its motion or in the Plaintiffs' response brief. Nor is it inclined to examine evidence or hear arguments that the parties could have made the first time around. It would have helped this court to have better briefing from both parties on the issues here in the first instance. Hopefully, the parties next round of briefing will more thoroughly address the remaining questions.

Stipulated Judgment. As to the choice of law determination, Kinsale argues that, "it was an error for the Court to hold that Florida and Indiana law are the same on every issue, and for failing to consider Kinsale's submission and argument regarding why Florida law applies." (ECF No. 131, at 3). First, this Court did not, as Kinsale represents, hold that Florida and Indiana law *are the same on every issue*. In Section A of its Opinion and Order, the Court addressed choice of law solely as it related to the coverage questions the parties presented. In that section, the Court expressly acknowledged that the parties represented that they agreed Florida law applies. Yet the Court also noted that unless there is "a conflict between state laws important enough to affect the outcome of the litigation" it need not engage in the choice of law analysis and should apply the law with which it is most familiar. (ECF No. 119, at 10). This Court's decision to apply Indiana law was supported by Kinsale's own representation that "there is no conflict on the threshold issue of coverage between Florida and Indiana. Both states decide the threshold duty to defend based on the plain language of the insurance policy that the insured purchased." (ECF No. 96, at 2). It was also bolstered after Kinsale again told the Court a paragraph later that "[w]hether Indiana or Florida, the bedrock principle is that insurance contracts are construed according to their plain meaning." (ECF No. 96, at 3). Simply put, if Kinsale thought there was a conflict between Indiana and Florida law on the coverage issues in the case, it shouldn't have told the Court otherwise. Now, after an adverse ruling, is not the time to make that argument. Moreover, because Kinsale argued there was no difference in how Indiana and Florida would construe the insurance contract, in practical terms this Court's result would have been the same under either law. (ECF No. 119, at 19 n.13)

Understanding that, Kinsale now argues that there *is* a difference between Indiana and Florida law on whether collateral estoppel forecloses Kinsale from challenging the Stipulated Judgment through extrinsic evidence. Kinsale asserts that collateral estoppel "does not exist in

6

Florida." But that's far from clear. "In Florida, as elsewhere, the duty of an insurer to defend its insured is continuing in nature. . . . Where either an indemnitor or liability insuror has notice of a proceeding against his indemnitee or insured, and is afforded an opportunity to appear and defend, a judgment rendered against the indemnitee or insured, in the absence of fraud or collusion, *is conclusive against the indemnitor or insuror as to all material matters determined therein.*" *Coblentz v. Am. Sur. Co. of New York*, 416 F.2d 1059, 1062–63 (5th Cir. 1969) (applying Florida law) (emphasis added). Here, the material matters were determined in the Stipulated Judgment that brought the case to an end, and those matters were what the Court considered.

That said, Kinsale cites a flurry of cases it believes validates its position. *See Spencer v. Assurance Co. of Am.,* 39 F.3d 1146, 1149 (11th Cir. 1994) ("Florida law clearly states that liability of an insurer depends upon whether the insured's claim is within the coverage of the policy. This remains true even when the insurer has unjustifiably failed to defend its insured in the underlying action."); *Steil v. Florida Physicians' Insurance Reciprocal,* 448 So.2d 589, 592 (Fla. 2d DCA 1984); *Florida Farm Bureau Mut. Ins. Co. v. Rice,* 393 So.2d 552 (Fla. 1st DCA 1980). But this Court does not read these cases to allow the Court to engage in independent fact-finding or to litigate the original action in an enforcement action.

Even if it did, however, Kinsale waived this argument by not raising it in its briefs. Kinsale argues that it was ambushed by this Court's decision to apply collateral estoppel because Plaintiffs never raised it. But Plaintiffs did object to the exhibits Kinsale sought to use related to the coverage issues in its summary judgment brief. *See* ECF No. 104, at 5. Additionally, Plaintiffs argued that Kinsale improperly relied on extrinsic evidence. *Id.* at 12-13. If this weren't enough to raise the alarm, Plaintiffs' summary judgment response extensively quoted *Kras v. Conifer Insurance Co.*, No. 2:16-CV-224, 2016 WL 6893686, at *7 (N.D. Ind. Nov. 23, 2016), which discusses the

7

ramifications for insurers who abandon their insured and seek to be relieved from a consent judgment. While Plaintiffs did not use the words "collateral estoppel," they did dispute enough for Kinsale to recognize the issue potentially existed.

One final thought on this issue remains. The Court ordered the parties to engage in settlement discussions and, if those discussions were unproductive, to file renewed cross-motions for summary judgment on whether the Stipulated Judgment was reasonable and negotiated in good faith. The Court acknowledged in its Order that Florida and Indiana law differ on who bears the burden of proof on these issues. While the Court said that it believed Indiana law would apply to the enforceability of an Indiana judgment in an Indiana federal court, this Court left open the possibility that Kinsale could argue that Florida law applied:

> the Court cannot identify a legal basis for applying Florida law here and Kinsale doesn't provide any meritorious explanation. The Settlement Agreement and the Covenant expressly include an Indiana choice of law provision. The stipulated Judgment is a Judgment from an Indiana court. Absent a cogent argument that Indiana law should not apply here, the Court will apply Indiana law to the enforceability of the Judgment.

(ECF No. 119, at 24). If Kinsale believes that Florida law is the appropriate applicable law on the issue of the Stipulated Judgment's enforceability, it may make that argument and all other arguments it has on the reasonableness of the Stipulated Judgment in the next round of briefing, should it occur.

Kinsale raises a host of other complaints, but they all boil down to one fact: its dissatisfaction with this Court's rulings. Kinsale complains for a second time that the Court inappropriately raised a coverage issue sua sponte, but this Court addressed that argument in its Order:

> Kinsale also asserts that Plaintiffs never raised ambiguity as an affirmative defense and has never argued during the litigation that the coverage to which the Endorsement applies is ambiguous. Kinsale implies that, for this reason, Plaintiffs

8

> are merely seizing on the Court's inquiry to support their cause. They also imply that the Court is foreclosed from asking the question or has overstepped its judicial role by asking it since it was never raised by the parties. The Seventh Circuit, however, tells the Court otherwise. "[W]hile a judge should never engage in advocacy from the bench, he or she has an obligation to raise legal issues that the parties have over-looked or neglected. After all, the judge is on the bench in the first place (we trust) because of superior legal background, expertise, or credentials, and for that reason '[should] not sit as a passive observer who functions solely when called upon by the parties.'" (citation omitted). *Jones v. Page,* 76 F.3d 831, 850 (7th Cir.1996); *S. Illinois Riverboat Casino Cruises, Inc. v. Triangle Insulation & Sheet Metal Co.*, 302 F.3d 667, 677 (7th Cir. 2002) (noting that once a judge raises an issue that the parties did not argue, it is required to allow the parties to be heard on the issue.[)]Because the Court found inconsistent language among the endorsements throughout the Policy, the Court believed the use of such language called into question which coverage the specific Endorsement modified. This was an issue overlooked by the parties and the Court was well within its authority to raise the issue and allow the parties an opportunity to file briefs on the question of ambiguity, all of which it did.

(ECF No. 119, at 20-21).

This Court has spent a disproportionate amount of time on this case to address, and now re-address, the issues the parties briefed. "Motions to reconsider are not designed to give an unhappy party an opportunity to re-litigate matters already decided nor is it a substitute for an appeal. A motion to reconsider is not simply an opportunity to re-argue facts and theories upon which the Court has already ruled." *U.S.A. v. Mehrabani*, No. CR 23-294-JFW, 2024 WL 5311156, at *4 (C.D. Cal. Oct. 9, 2024). The Court undertook its best effort to resolve the issues presented. For better or for worse, this Court has resolved the motions for summary judgment and finds no manifest error of law warranting further reconsideration. The Motion for Reconsideration (ECF No. 130) is DENIED, as is the Motion to Strike Reference to Non-Existent Policy Language from Kinsale's Reply (ECF No. 141).

## **CONCLUSION**

For the reasons above, the Motion for Reconsideration (ECF No. 130) is DENIED. The Motion to Strike (ECF No. 141) is DENIED. The parties are encouraged to engage in good faith

settlement discussion within 60 days and file a joint status report on the status of settlement on or before November 17, 2025. If the case is unresolved, the parties shall have until January 16, 2026, to file renewed cross-motions for summary judgment as to the enforceability of the Stipulated Judgment.

    SO ORDERED on September 17, 2025.

                                                    s/ *Holly A. Brady*
                                                    CHIEF JUDGE HOLLY A. BRADY
                                                    UNITED STATES DISTRICT COURT